John J. MURRAY, James N. Berardi, Robert A. Petitti, and Joseph M. Hurley, individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

Cory J. MINER, Paul I. Brown, and MMAR Group, Inc., Defendants–Appellees.

No. 203, Docket 95–7256.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1995.

Decided Jan. 18, 1996.

Daniel A. Lowenthal, III, New York City (Francis Carling, Winthrop, Stimson, Putnam & Roberts, New York City, of counsel), for Appellants.

Donato Caruso, New York City (William M. Spelman, Lambos & Giardino, New York City, of counsel), for Appellees.

Before: MESKILL, ALTIMARI and McLAUGHLIN, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York dismissing a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. We affirm the dismissal and hold that the single employer doctrine does not apply in the absence of an employer-employee relationship at the time of the alleged wrong.

## BACKGROUND

This diversity case involves an attempt to impose on defendants liability for judgments entered against a now-defunct corporation in two prior lawsuits. James Berardi, Joseph Hurley, John Murray and Robert Petitti (plaintiffs-appellants) all are domiciled in New Jersey and former employees of Funda-mental Brokers, Inc. (FBI), a corporation with its principal place of business in New York. The MMAR Group, Inc. and its principal shareholders, Cory Miner and Paul Brown (collectively "the MMAR defendants"), all are domiciled in Texas.

In July 1989 and January 1990, appellants brought two related suits against FBI alleging breach of contract as to two compensation guarantees and bonus awards in 1987–88 and 1988–89 (the *Berardi* actions). In July 1992, after a jury trial, the United States District Court for the Southern District of New York, Martin, *J.*, entered judgments in favor of appellants and against FBI.

Meanwhile, in October 1990, the MMAR defendants formed Gnubrokers Holding, Inc. (GHI). In February 1991, GHI and FBI entered into an asset purchase agreement, transferring FBI's assets to GHI. In that agreement, GHI expressly assumed liability for the *Berardi* actions and other pending compensation claims.

In August 1992, before the *Berardi* judgments were satisfied, FBI and GHI became the subjects of involuntary bankruptcy proceedings. Appellants filed a proof of claim in the bankruptcy proceedings and then instituted this action, seeking to impose liability on the MMAR defendants for the unsatisfied *Berardi* judgments, which exceeded $50,000. Although a settlement agreement between the MMAR defendants and the trustee in bankruptcy incorporated the veil-piercing/alter-ego claims of GHI creditors for *res judicata* purposes, appellants contend that the MMAR defendants are liable for the balance of the *Berardi* judgments under the single employer doctrine.

## DISCUSSION

### I. *Standard of Review*

We review *de novo* the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6). *Austern v. Chicago Bd. Options Exch.*, 898 F.2d 882, 885 (2d Cir.), *cert. denied*, 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990). Under this rule we must construe the complaint in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and

accept the allegations of the complaint as true. Dismissal of the complaint is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## II. *The Single Employer Doctrine*

The parties agreed at oral argument that New York law governs the question of whether the single employer doctrine applies in this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). However, because there is no New York authority on the issue before us, we must attempt to deduce what New York's highest court would decide. *Cunninghame v. Equitable Life Assurance Soc'y of the United States*, 652 F.2d 306, 308 (2d Cir. 1981) (per curiam). We conclude that the New York Court of Appeals would look to federal precedent, where the single employer doctrine originated, and would rule that the single employer doctrine does not apply in this case.

■ The law allows a corporation to organize so as to isolate liabilities among separate entities. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir.1993). Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil. *See id.* at 1362 & n. 2 (describing various veil-piercing theories).

Similarly, the law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances. *U.S. West, Inc.*, 3 F.3d at 1362. For example, the National Labor Relations Board (NLRB) developed the single employ-er doctrine, which treats two nominally independent enterprises as a single employer, in order to protect the collective bargaining rights of employees and to advance industrial stability.[1] *See Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965) (per curiam) (adopting single employer criteria established by the NLRB); *see also* Miriam Goldstein, Saks & Company v. NLRB: *Toward the Emasculation of the Successorship Doctrine?*, 48 Brook.L.Rev. 1103, 1106 n. 9 (1982) (discussing single employer doctrine). More recently, the single employer doctrine has been extended to the civil rights context. *Trevino v. Celanese Corp.*, 701 F.2d 397, 403–04 (5th Cir.1983) (applying single employer doctrine under Title VII); *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982) (applying the single employer doctrine under the Age Discrimination in Employment Act).[2]

■ Under the single employer doctrine, four factors determine whether two entities will be regarded as a single employer subject to joint liability for employment-related acts. They are: (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *Radio and Television Broadcast*, 380 U.S. at 256, 85 S.Ct. at 877; *Perry v. Manocherian*, 675 F.Supp. 1417, 1425 (S.D.N.Y.1987). Although no one factor is determinative, *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983); *Owens v. American Nat'l Red Cross*, 673 F.Supp. 1156, 1161 (D.Conn.1987), and, indeed, all four factors are not required, *Armbruster*, 711 F.2d at 1338, control of labor relations is the central concern, *U.S. West, Inc.*, 3 F.3d

**1.** More specifically, the NLRB uses the single employer doctrine to determine liability for unfair labor practices, to determine whether or not union picketing is directed at a neutral "secondary employer," to determine whether a union may seek to represent the employees of two enterprises in a single bargaining unit, and to determine whether an employer employs enough workers to satisfy NLRA jurisdictional limits. Wilson McLeod, *Shareholders' Liability and Workers' Rights: Piercing the Corporate Veil Un-der Federal Labor Law*, 9 Hofstra Lab.L.J. 115, 143 (1991).

**2.** It is not clear whether the single employer doctrine applies to common law claims of employees. *See Owens v. American Nat'l Red Cross*, 673 F.Supp. 1156, 1160–61 (D.Conn.1987) (applying single employer doctrine to common law claims that implicated public policy concerns). In light of our disposition of this case, we need not address that issue.

at 1363; *Trevino,* 701 F.2d at 404; *Owens,* 673 F.Supp. at 1161.

In other words, the policy underlying the single employer doctrine is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship. *See Armbruster,* 711 F.2d at 1337 (suggesting that indicia of interrelatedness justifies joint responsibility for acts of immediate employer). That policy is most implicated where one entity actually had control over the labor relations of the other entity, and, thus, bears direct responsibility for the alleged wrong. *See U.S. West, Inc.,* 3 F.3d at 1363 (stating that "[t]he critical question is, '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'") (quoting *Trevino,* 701 F.2d at 404). However, regardless of the degree of control necessary to support a finding that two corporations acted as a single employer,[3] the policy giving rise to the single employer doctrine is not implicated at all in the absence of an employer-employee relationship between the plaintiff and the affiliate of the defendant at the time of the alleged wrong. *See Parliament House Motor Hotel v. EEOC,* 444 F.2d 1335, 1340–41 (5th Cir.1971) (allowing discovery where the two entities may have constituted a single employer "at the time the alleged act of discrimination occurred"); *EEOC v. McLemore Food Stores,* 25 Fair Empl.Prac.Cas. (BNA) 1356, 1359–60, 1978 WL 13922 (W.D.Tenn.1978) (ordering evidentiary hearing restricted to relationship among entities "at the time the alleged acts of discrimination occurred").

Appellants contend, in essence, that a single employer is liable not only for wrongs committed by an affiliate, but for wrongs assumed by an affiliate. More specifically, they argue that because GHI is liable to appellants, and because the MMAR defendants and GHI acted as a "single employer," the MMAR defendants are liable for GHI

liabilities. Appellants cite no case law to support the juxtaposition of either successor liability or contractual liability with single employer liability.

■ Appellants' argument must fail. The single employer doctrine is an exception to the doctrine of limited liability, which allows corporations to organize so as to isolate liabilities among separate entities. *U.S. West, Inc.,* 3 F.3d at 1362. The rationale for the exception is the fairness of imposing responsibility on an entity that shares decisionmaking authority with the employing entity. Thus, for this policy to apply, the two entities must constitute a single employer at the time the unlawful act was committed. *Parliament House,* 444 F.2d at 1340–41; *McLemore Food Stores,* 25 Fair Empl.Prac.Cas. at 1359–60.

■ Because FBI admittedly had no relationship to the MMAR defendants at the time of FBI's alleged wrongdoing, or more specifically, because there was no employer-employee relationship between appellants and GHI at the time of the alleged wrong, the MMAR defendants are not liable to appellants under the single employer doctrine. Appellants cannot avoid the effects of the bankruptcy trustee's settlement of the veil-piercing claims of GHI creditors by simply substituting the single employer doctrine for the veil-piercing doctrine. In the absence of an employer-employee relationship, the single employer doctrine does not apply.

### CONCLUSION

For the reasons stated above, the judgment of the United States District Court for the Southern District of New York is affirmed.

---

3. *See Canton, Carp's, Inc.,* 125 N.L.R.B. 483 (1959) (finding single employer status where defendant affirmatively demonstrated that the two corporations established their own labor relations policy); *V.I.P. Radio,* 128 N.L.R.B. 113 (1960) (finding single employer status with centralized control of general labor policy). "The degree to which such control is present (or absent) is, of course, one of the circumstances upon which 'single employer' status depends." *Local No. 627, Int'l Union of Operating Eng'rs v. NLRB,* 518 F.2d 1040, 1046 (D.C.Cir.1975), *aff'd in part, rev'd in part on other grounds sub nom. South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs,* 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (per curiam).