12-4107-cv
United Union of Roofers, Waterproofers, and Allied Workers Local No. 210 v. A.W. Farrell & Son, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of October, two thousand thirteen.

PRESENT:   ROBERT D. SACK,
           REENA RAGGI,
           CHRISTOPHER F. DRONEY,
                    *Circuit Judges*.

-------------------------------------------------------------------------
UNITED UNION OF ROOFERS, WATERPROOFERS, AND ALLIED WORKERS LOCAL NO. 210, AFL-CIO, and GEOFFREY MCCREARY, JACK LEE, in their capacities as Trustees of the United Union of Roofers, Waterproofers and Allied Workers, Local No. 210 Money Purchase Pension Plan and Joint Health and Welfare Program,

                    *Plaintiffs-Appellants*,


                    v.                                   No. 12-4107-cv


A.W. FARRELL & SON, INC., ROOF CRAFT SYSTEMS, INC., JOHN W. FARRELL, AKA Bill Farrell, JOHN T. FARRELL,

                    *Defendants-Appellees*.[*]
-------------------------------------------------------------------------

---

[*] The Clerk of Court is directed to amend the official caption as shown above.

APPEARING FOR APPELLANTS:       JOHN   A.   COLLINS,   Robert L. Boreanaz,
                                (Andrew O. Miller, *on the brief*), Lipsitz Green
                                Scime Cambria, Buffalo, New York.

APPEARING FOR APPELLEES:         CRAIG   A.   LESLIE,   Phillips Lytle, Buffalo,
                                New York.

Appeal from a judgment of the United States District Court for the Western

District of New York (H. Kenneth Schroeder, *Magistrate Judge*).

UPON  DUE  CONSIDERATION,  IT  IS  HEREBY  ORDERED,  ADJUDGED,

AND DECREED that the judgment entered on September 11, 2012, is AFFIRMED.

Plaintiffs United Union of Roofers, Waterproofers, and Allied Workers, Local No.

210, AFL-CIO ("Local 210") and two of its trustees sued defendants A.W. Farrell & Son,

Inc. ("A.W. Farrell"), Roof Craft Systems, Inc. ("Roof Craft"), John W. Farrell ("Bill

Farrell") and John T. Farrell ("John Farrell"), for legal and equitable relief pursuant to the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and

1145, and the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Plaintiffs

now appeal from a judgment in favor of defendants entered after an 11-day bench trial

and supported by findings of fact and conclusions of law set forth in the district court's

33-page Memorandum of Decision.[1]  Plaintiffs submit that the district court erred in

failing to find that A.W. Farrell and Roof Craft have a single employer or alter ego

relationship, so as to bind Roof Craft to several collective bargaining agreements

("CBAs") to which A.W. Farrell and Local 210 are parties.  Plaintiffs further fault the

---

[1] With the consent of the parties, the case was tried before and final judgment entered by
a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

2

district court for failing to hold defendants Bill and John Farrell personally liable for fraud. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1. Standard of Review

Following a bench trial, we review a district court's findings of fact for clear error and its legal conclusions de novo. See SEC v. Pentagon Capital Mgmt, PLC, 725 F.3d 279, 284 (2d Cir. 2013). Plaintiffs here contend that de novo review applies generally because the single employer and alter ego inquiries present a mixed question of law and fact, and the district court's findings of fact are infected by legal error that invalidates its ultimate single employer and alter ego determinations. As we have explained, in the ERISA context, "[w]e defer to the district court's factual findings in support of its determination of alter ego status unless clearly erroneous, while we review its legal conclusions de novo." Retirement Plan of UNITE HERE Nat'l Ret. Fund v. Komabassan Holding A.S., 629 F.3d 282, 287 (2d Cir. 2010). We have also held that "[t]he determinations of both single employer and alter ego status are questions of fact." Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996). Here, we conclude that there is no merit to plaintiffs' claim that the district court erred in applying the correct legal standard to its findings of fact. We further conclude that, while the facts found by the district court and evident from the full trial record do not point in one direction, plaintiffs fail to show that, as a matter of law, the district court was required to find that the facts demonstrated either a single employer or alter ego relationship.

3

2.    Single Employer Doctrine

A collective bargaining agreement binding on one employer may be enforced against a non-signatory employer if (1) the two employers constitute a "single employer" and (2) the employees of the companies constitute a single appropriate bargaining unit. See Brown v. Sandimo Materials, 250 F.3d 120, 128 n.2 (2d Cir. 2001).

Whether two entities constitute a "single employer" is determined by four factors enumerated by the Supreme Court: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. See Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc., 380 U.S. 255, 256 (1965) (per curiam). We have added two additional factors: (5) "the use of common office facilities and equipment," and (6) "family connections between or among the various enterprises." Lihli Fashions Corp. v. NLRB, 80 F.3d at 747 (explaining that single employer status is characterized by absence of arm's length relationship between companies). While no single factor is dispositive, we have identified control of labor relations as "central." Murray v. Minor, 74 F.3d 402, 404 (2d Cir. 1996).

In Murray, we observed that the single employer doctrine is "an exception to the doctrine of limited liability, which allows corporations to organize so as to isolate liabilities among separate entities." Id. at 405. We also observed that "the law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances." Id. at 404. Plaintiffs submit that the district court erred as

4

a matter of law in construing this language to establish a "strong presumption of limited liability" and then concluding that they had failed to "overcome" this presumption at trial by a demonstration of sufficiently "extraordinary" circumstances. United Union of Roofers v. A.W. Farrell & Son, Inc., No. 07-CV-224-HKS, 2012 WL 4092598, at *10, *16 (W.D.N.Y. Sept. 10, 2012). We disagree.

Murray's identification of the single employer doctrine as an "exception" to the long-standing legal presumption of separate corporate identities is general, as is its recognition that the law treats employees of one corporate entity as employees of another only under "extraordinary circumstances." 74 F.3d at 404, 405. While Murray observed that the extraordinary circumstances necessary to overcome the presumption have, in fact, been found in certain labor and civil rights cases, see id. at 404 (collecting cases), it nowhere suggested that all such cases present such extraordinary circumstances. That determination can only be made on an assessment of the totality of particular circumstances in a given case. Here, the district court made detailed findings of fact and then methodically reviewed each factor identified in Radio & Television Broadcasting Technicians in light of those facts. In these circumstances, we identify no error in legal standards to infect the district court's single employer determination.

In the absence of such a legal error, plaintiffs, who bore the burden of proving single employer status at trial,[2] cannot demonstrate that the district court erred as a matter

---

[2]The district court concluded that plaintiffs "failed to establish by a preponderance of the evidence" that Roof Craft and A.W. Farrell have a single employer or alter ego relationship, United Union of Roofers v. A.W. Farrell & Son, Inc., 2012 WL 4092598, at *16, and

5

of law in finding that they failed to carry their burden.[3]  See generally Karavos Compania Naviera S.A. v. Atlantica Exp. Corp., 588 F.2d 1, 8 (2d Cir. 1978) (Friendly, J.) (cautioning against conflating questions of law and fact, but noting that lower court's resolution of mixed question "will ordinarily stand unless the lower court manifests an incorrect conception of the applicable law" (citation and internal quotation marks omitted)).  The facts developed at trial plainly pointed in different directions with respect to the factors relevant to a single employer determination.  In such circumstances, we accord the district court considerable discretion in assigning weight to competing evidence, and we will not reverse unless the evidence, as a matter of law, compelled a different conclusion from that reached.   See Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); Amalfitano v. Rosenberg, 533 F.3d 117, 123 (2d Cir. 2008) ("In reviewing findings for clear error, we are not allowed to second-guess either the trial court's credibility assessments or its choice between permissible competing inferences. . . . This is so even if we might have weighed the evidence differently." (citations and internal quotation marks omitted)); Leyda v. AlliedSignal, Inc., 322 F.3d 199, 208 (2d Cir. 2003) (applying Anderson rule to district

---

plaintiffs do not dispute that they bore the burden of proof at trial.

[3]Defendants argue that because A.W. Farrell and Roof Craft are national companies, plaintiffs could not carry their burden by reference only to these companies' Erie, Pennsylvania, operations.  We need not decide that issue because we conclude, in any event, that the district court did not err as a matter of law in finding plaintiffs not to have carried their burden as to the Erie operations.

court's findings of fact in ERISA bench trial); cf. Lopresti v. Terwilliger, 126 F.3d 34, 39 (2d Cir. 1997) (explaining in ERISA action by union pension fund trustee that Anderson rule applies to challenges to bench trial findings of fact, but that because trustee "dispute[d] the legal conclusion reached by the district court . . . and not the factual findings which formed the basis for that conclusion, de novo review [was] appropriate").

We will not here attempt to review all relevant facts. We note simply that a single employer relationship found support in evidence showing, inter alia, that A.W. Farrell and Roof Craft shared common administrative offices and administrative personnel; A.W. Farrell owner Bill Farrell financed the acquisition of Roof Craft in the names of two of his adult children and permitted Roof Craft to use a building he owned as its Erie headquarters rent free; A.W. Farrell Vice President John Farrell reportedly professed an ability to withdraw Roof Craft's bid on a contract (though no such action was ever taken), hired and trained Roof Craft manager Brian Fenno, and authorized A.W. Farrell salesman Rick Allen to generate sales for Roof Craft; A.W. Farrell gave Roof Craft equipment and delivered materials to Roof Craft job sites during Roof Craft's Erie start-up phase; and Roof Craft applied certain A.W. Farrell work rules and policies to its own roofing employees.

At the same time, however, evidence at odds with a single employer claim showed that Brian Fenno exercised sole control over Roof Craft's day-to-day roofing operations, with no input from A.W. Farrell. Fenno alone decided on what jobs Roof Craft would bid and the amount to bid, ordered materials, and supervised all roofing work performed.

7

Fenno also exercised exclusive authority to hire, discipline, and fire employees performing roofing work for Roof Craft. He set these workers' salaries, work schedules, and job duties, and he awarded raises and promotions. No Roof Craft roofers ever worked on A.W. Farrell jobs, and no A.W. Farrell roofers ever worked on Roof Craft jobs. Indeed, the two companies targeted different parts of the Erie roofing market, with 50–75% of A.W. Farrell's Erie business consisting of built-up roofing services, work that Roof Craft lacked the necessary equipment to perform; Roof Craft focused instead on single-ply EPDM rubber installations, which represented a smaller share of A.W. Farrell's work. Meanwhile, at the same time that as much as 75% of A.W. Farrell's Erie work consisted of prevailing-wage contracts, Roof Craft never performed prevailing-wage work. Further, while A.W. Farrell performed administrative services for Roof Craft, it apportioned the cost of that work pro rata, and Roof Craft paid A.W. Farrell for the services. Insofar as A.W. Farrell provided some of its own used equipment to Roof Craft during the latter's start-up phase in Erie—apparently free of charge—the transfer was complete, i.e., the companies did not thereafter share the equipment. Finally, while there was a close family relationship between the two companies—A.W. Farrell was owned by Bill Farrell and its Erie operations were run by son John, while Roof Craft was owned by son Mark and daughter Cathy—the companies were Section S entities, with the respective owners bearing distinct tax responsibility.

On this record of conflicting facts, which the district court acknowledged, we cannot conclude that it was compelled, as a matter of law, to find a single employer relationship. Accordingly, we identify no merit in this part of plaintiffs' appeal.

3.    Alter Ego Doctrine

Plaintiffs invoke many of the same arguments to challenge the district court's rejection of their alter ego argument for holding A.W. Farrell and Roof Craft liable on the claims presented. See Truck Drivers Local Union No. 807, I.B.T. v. Reg'l Imp. & Exp. Trucking Co., 944 F.2d 1037, 1046 (2d Cir. 1991) (recognizing alter ego doctrine as alternative basis for binding non-signatory to CBA). Alter ego analysis, like single employer analysis, considers whether "two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." Lihli Fashions Corp. v. NLRB, 80 F.3d at 748 (internal quotation marks omitted). The doctrines are distinct, however, in that alter ego analysis focuses on "the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations," a point on which "anti-union animus or an intent to evade union obligations" may be "germane," although not essential. Id. (citation and internal quotation marks omitted); accord Retirement Plan of UNITE HERE Nat'l Ret. Fund. v. Kombassan Holding A.S., 629 F.3d at 288.

For the reasons stated in the preceding section, we identify no legal error in the district court's application of the relevant legal standard, nor can we conclude that the trial record compelled it, as a matter of law, to find that, in their Erie operations, A.W. Farrell and Roof Craft had substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership. Further, we cannot

9

conclude that the trial evidence compelled the district court to find that A.W. Farrell established Roof Craft to avoid CBA obligations. In this respect, undisputed trial evidence indicated that Bill and John Farrell are longtime union supporters and that no union grievance had ever been filed against A.W. Farrell prior to the events complained of in this action.

Thus, we identify no merit in plaintiffs' alter ego challenge on appeal.

4.      Personal Liability

At trial, plaintiffs also urged that Bill and John Farrell—neither of whom is a signatory to the CBAs—be held personally liable under ERISA for fraudulently operating Roof Craft as an alter ego of A.W. Farrell with the intent to evade CBA obligations. Because we identify no error in the district court's rejection of plaintiffs' single employer and alter ego theories of ERISA liability, which were based largely on conduct by Bill and John Farrell, we also identify no error in its rejection of plaintiffs' claims against these individual defendants. See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo, 35 F.3d 29, 36 (2d Cir. 1994) (observing that we have "imposed individual liability for ERISA obligations only in those extraordinary cases where the defendant has committed fraud . . . or acted in concert with a fiduciary to breach a fiduciary obligation" (internal citations omitted)); Sasso v. Cervoni, 985 F.2d 49, 51 (2d Cir. 1993) (declining to hold corporate officer personally liable for unpaid contributions under ERISA where he neither committed fraud nor participated in fiduciary's breach of ERISA trust obligations).

We have considered plaintiffs' remaining arguments and reject them as without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court