Bernard H. FRISHBERG and Dee Bee Sales Corp., Plaintiffs,

v.

ESPRIT DE CORP., INC., Defendant.

No. 90 Civ. 5150 (RLC).

United States District Court, S.D. New York.

Dec. 10, 1991.

Wisehart & Koch, New York City (Arthur M. Wisehart, of counsel), for plaintiffs.

Kaye, Scholer, Fierman, Hays & Handler, New York City (William C. Zifchak, David E. Prager, Harvey P. Sanders, of counsel), for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs in this employment discrimination case make claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and the New York Human Rights Law, N.Y.Exec.Law § 296(1)(a) (McKinney 1982), as well as claims for breach of contract and tortious interference with business relations. Plaintiff Bernard H. Frishberg ("Frishberg") is president and sole shareholder of plaintiff Dee Bee Sales Corporation ("Dee Bee Sales"), which employed Frishberg and several other people as sales representatives marketing merchandise for defendant Esprit de Corp. ("Esprit"). Jurisdiction is based both on the presence of a federal question and diversity of citizenship of the parties.[1] Defendant Esprit has moved for summary judgment on all of plaintiffs' claims.

---

1. Plaintiff Frishberg is a citizen of the State of New York and plaintiff Dee Bee Sales is a corporation incorporated under the laws of the State of New York, with its principal place of business in New York, New York. Defendant is a California corporation with its principal place of business in San Francisco, California.

## I.

The undisputed facts relevant to the present motion are as follows. In 1978, Frishberg met with Leon C. Rosenberg ("Rosenberg"), national sales manager for Esprit, to discuss selling Esprit merchandise. Their eventual agreement that Frishberg would sell women's wear for Esprit as a commissioned salesperson was memorialized in a letter from Rosenberg to Frishberg, dated October 9, 1978. Esprit claims that this letter embodied the entirety of the agreement between the parties, while Frishberg maintains that his agreement with Rosenberg, and therefore with Esprit, was partly written and partly oral.

The letter agreement stated the terms of Frishberg's engagement as follows: his sales territory included all of New Jersey, Long Island, upstate New York, and the New York metropolitan region, less certain accounts; his remuneration would be a commission of eight percent (8%) of net shippings; he was to sell only Esprit merchandise; and he was to hire two salespeople to work for him in selling Esprit products.

Initially, Frishberg was paid directly by Esprit, as were the two salespeople he hired to work with him. During this period Esprit deducted payroll taxes from the commissions it paid to Frishberg. However, in 1981 Frishberg formed Dee Bee Sales, a New York corporation of which he was sole shareholder and through which he sold Esprit goods. From that date forward, Frishberg and the salespeople he hired were paid by Dee Bee Sales, which deducted payroll taxes on their behalf, and Esprit paid commissions on the merchandise sold by all these people directly to Dee Bee Sales.

Frishberg d/b/a Dee Bee Sales employed several salespeople and assistants from 1981 to 1989, including two that covered the upstate New York sales territory for Dee Bee Sales. Esprit provided these salespeople with drawing accounts, but only on the condition that Frishberg d/b/a Dee Bee Sales guarantee them. On at least one occasion, Frishberg had to pay Esprit $5,000 to cover the overdrafts of a Dee Bee Sales salesperson.

Frishberg d/b/a Dee Bee Sales kept two offices, one in the basement of Frishberg's house in East Meadow, New York, and the other a condominium showroom in Atlantic City, New Jersey. Frishberg purchased and maintained these two offices at his own expense. Frishberg d/b/a Dee Bee Sales also paid a fee to Esprit for the use of an Esprit showroom in New York City.

Frishberg d/b/a Dee Bee Sales paid many of its own business expenses, including rental space for displaying merchandise, automobile expenses, hotel rooms, telephone bills, and other travel costs. Esprit, however, paid all expenses when Frishberg and the salespeople employed by Dee Bee Sales attended quarterly Esprit sales meetings. Frishberg and the employees of Dee Bee Sales received no traditional employee benefits from Esprit. Dee Bee Sales paid for Frishberg's pension plan, medical expenses, disability insurance, life insurance, and vacations.[2] Frishberg also worked largely on his own, without daily supervision by Esprit. Frishberg set his own schedules and appointments with clients. He did, however, report at least weekly to Esprit officials regarding the sales Dee Bee Sales had produced in his territory.

Esprit sold its products through two sales forces, salaried sales representatives and commissioned sales representatives. When Frishberg first began to sell for Esprit, most of Esprit's sales force consisted of commissioned sales representatives, the status both he and the other employees of Dee Bee Sales assumed. Esprit's sales strategy at this time was to focus on specialty stores around the country in an effort to establish the company's name and image. As Esprit's reputation and size

---

**2.** Frishberg asserts at paragraph nine of his statement of disputed facts, submitted in accordance with Rule 3(g) of the Local Rules for the Southern and Eastern Districts of New York ("3(g) Statement"), that he was "offered" partic- ipation in Esprit's health and welfare benefit plan. However, Frishberg does not assert that he actually received health and welfare benefits from Esprit instead of providing them himself.

grew in the 1980's, Esprit changed its sales approach, concentrating more on major accounts such as large department stores. During this period Esprit took several steps to centralize the sales force, including establishing regional sales offices staffed with salaried sales representatives for each of four regions. These salaried sales representatives serviced many of the company's larger accounts.[3]

Beginning in 1983, Esprit reduced the commission rate applicable to commissioned sales representatives several times. That year the rate was reduced from 8% to 6%, in 1984 it was reduced to 5%, and then in 1988 it was further reduced to 4%. These commission reductions all affected Frishberg and Dee Bee Sales. In 1988, Esprit also moved the United States Navy account, a large account that had been very profitable for Frishberg, from Dee Bee Sales to the Esprit regional office in New York. Throughout this period Frishberg and Dee Bee Sales continued their relationship with Esprit.

In 1989, Esprit management continued the change in its sales approach. It pulled "in-house," i.e. into the closest regional sales office, most of the remaining major store accounts that were still being sold to by commissioned sales representatives. In accordance with this plan, Richard Baker ("Baker"), president of Esprit's women's wear division, called Frishberg on October 27, 1989, to inform him that the Stern's account, to which Frishberg had been selling and which constituted a large part of his business, was being reassigned to the regional office in New York.

A letter to Frishberg dated October 31, 1989, explained the restructuring and confirmed the removal of the Stern's account. The letter did not terminate Frishberg, but expressed Esprit's wish "to help you refocus your attention on the many other accounts and potential customers in your area...." Baker sent another letter to Frishberg on December 4, 1989, once again

confirming the restructuring and the removal of Stern's from his charge. In a letter dated December 6, 1989, Frishberg requested that airline tickets for the upcoming national sales meeting in Phoenix be forwarded to him, in accordance with past practice. No tickets were sent, and Frishberg did not attend the sales meeting. Various negotiations and this lawsuit followed.

## II.

Esprit has moved for summary judgment on all of plaintiffs' claims. To prevail on such a motion, the moving party must establish that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Rule 56(c), F.R.Civ.P. The court is not to "determine the truth of the matter but to determine whether there is a genuine [factual] issue" which must be reserved for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All evidence submitted must be viewed in a light most favorable to the party opposing the motion, *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and the court must resolve all doubts, ambiguities and inferences in the non-movant's favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The summary judgment hurdle is not insurmountable, however. The Supreme Court has noted that "[i]f the evidence [submitted by the party opposing summary judgment] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Liberty Lobby, supra,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The Court has explained that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish

---

**3.** Plaintiffs do not dispute these facts regarding Esprit's changing sales strategy; instead they assert that the strategy was used as a pretext for the purpose of discriminating against plaintiff Frishberg and other, older male sales representatives. Plaintiffs' Objections to Defendant's 3(g) Statement, ¶ 16.

its purpose." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Thus, once the movant has pointed out to the court the absence of a fact issue, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... [It] must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita, supra,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citations and footnotes omitted).

Esprit does not contend that there are no genuine issues of material fact regarding plaintiffs' discrimination claims under the ADEA and the state human rights law. Esprit argues instead that, based on the undisputed facts, plaintiff Frishberg is not an employee of Esprit but an independent contractor, and that he therefore has no claim under the ADEA or the state anti-discrimination law.

## A. *Employee or Independent Contractor Status*

■ Before any plaintiff can make out a case of employment discrimination under the ADEA, he must demonstrate that he is an employee or a prospective employee of the defendant. The ADEA provides no cause of action for independent contractors. *Hyland v. New Haven Radiology Assoc., P.C.,* 794 F.2d 793, 797 (2d Cir. 1986); *E.E.O.C. v. Zippo Mfg. Co.,* 713 F.2d 32, 35 (3d Cir.1983); *Hickey v. Arkla Industries, Inc.,* 699 F.2d 748 (5th Cir.1983); *Carney v. Dexter Shoe Co.,* 701 F.Supp. 1093 (D.N.J.1988); *Donohue v. Pendleton Woolen Mills, Inc.,* 47 Empl.Pract.Dec. ¶ 38,364, 1988 WL 36317 (S.D.N.Y.1988) (Cedarbaum, J.). The New York Human Rights Law also protects employees, not independent contractors. *Mehtani v. New York Life Ins. Co.,* 145 A.D.2d 90, 537 N.Y.S.2d 800, 802–03 (1st Dept.), *appeal dismissed in part and denied in part,* 74 N.Y.2d 835, 545 N.E.2d 631, 546 N.Y.S.2d 341 (1989). Thus the status of plaintiffs as employees of or independent contractors to Esprit is key to the viability of their discrimination claims under both the ADEA and state law.

■ Courts have adopted what they term a "hybrid" test for determining whether someone is an employee or an independent contractor within the meaning of the ADEA. This approach combines the "economic realities" test from the Fair Labor Standards Act context with the "right to control" test from the common law. Thus a court must examine the " 'economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee.' " *Zippo Mfg. Co., supra,* 713 F.2d at 37, (quoting *Cobb v. Sun Papers,* 673 F.2d 337, 341 (11th Cir.1982)). Since New York law distinguishes between employees and independent contractors in a sufficiently similar manner, the court will use the federal test for both state and federal claims.[4]

■ Under this test, "the extent of the employer's right to control the means and manner of the worker's performance is the most important factor," *Spirides v. Reinhardt,* 613 F.2d 826, 831 (D.C.Cir.1979), although other factors to consider include: (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e. by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the

---

4. *See Mehtani v. New York Life Ins. Co.,* 145 A.D.2d 90, 537 N.Y.S.2d 800, 802–03 (App.Div. 1st Dept.1989) (test looks to whether "employer" exercised control over results produced by "employee" or the means used to achieve the results); *Engel v. Calgon Corp.,* 114 A.D.2d 108, 498 N.Y.S.2d 877, 878 (3d Dept.1986), *aff'd,* 69 N.Y.2d 753, 505 N.E.2d 244, 512 N.Y.S.2d 801 (1987).

"employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 832.

An application of this hybrid test to the undisputed facts in this case shows that Frishberg and Dee Bee Sales were largely independent of Esprit and thus were not Esprit employees. As noted above, the primary element of the test is the extent of the putative employer's right "to control the means and manner of the worker's performance." *Spirides, supra,* 613 F.2d at 831. The undisputed facts show that Esprit had little control over the manner in which Dee Bee Sales and its employees performed their job. Frishberg developed his own accounts, set his own schedules, kept his own hours, and operated largely without direct supervision from anyone at Esprit. While Frishberg appears to have been in weekly contact with people either at Esprit or in the regional sales office, this degree of contact indicates significant independence on the part of Frishberg and the others at Dee Bee Sales, as opposed to the kind of direct supervision and control that is typical of an employer-employee relationship. *Cf. Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 611 F.Supp. 344 (S.D.N.Y.1984) (Weinfeld, J.) (finding temporary secretary an employee since her work assignments and schedule were completely controlled by Merrill Lynch supervisors); *Zippo Mfg. Co., supra,* 713 F.2d at 38 (holding that the periodic monitoring of a sales representative's sales figures does not amount to supervision of performance within meaning of the hybrid test).

Frishberg sold for Esprit for a long period of time, and his selling Esprit merchandise could be characterized as integral to Esprit's business, thus supporting his status as an employee. The remaining factors of the hybrid test, however, bear out the conclusion that Frishberg and Dee Bee Sales were independent contractors. Extensive testimony by Frishberg himself suggests that his job was one requiring a high degree of skill and experience, a factor weighing in favor of independent contractor status. Further, Frishberg d/b/a Dee Bee Sales either furnished its own place of work, in the form of its two offices or motel rooms on the road, or rented showroom space from Esprit. Employees of Esprit would not normally be so burdened. Esprit also treated Frishberg as an independent contractor: it paid him commissions, not a salary, did not withhold payroll taxes, and did not provide traditional employee or retirement benefits or annual leave time. Instead, Frishberg paid for his own pension and health benefits through Dee Bee Sales.[5]

■ Further, Frishberg was able to exercise considerable initiative in the running of Dee Bee Sales and the cultivation of his sales territory. This ability to influence profitability through his own management and planning is a strong indication that Frishberg's operation was largely independent of Esprit. *See Hickey, supra,* 699 F.2d at 752; *Zippo Mfg. Co., supra,* 713 F.2d at 38. Dee Bee Sales was also required to guarantee the drawing accounts of its employee salespeople, a responsibility Esprit itself would likely assume if all the employees of Dee Bee Sales were actually employees of Esprit, as asserted by plaintiffs. Finally, Frishberg described himself on tax forms as an "outside salesman," suggesting that he considered himself "outside" of Esprit, not its employee. *See Dexter Shoe Co., supra,* 701 F.Supp. at 1099 (holding that salesman who described himself as a "self-employed rep[resentative]" was an independent contractor).

■ The fact that Frishberg d/b/a Dee Bee Sales was required to sell only Esprit

5. Plaintiffs place considerable reliance on *Donohue v. Pendleton Woolen Mills, Inc.,* 47 Empl. Pract.Dec. ¶ 38,364, 1988 WL 36317 (S.D.N.Y.1988) (Cedarbaum, J.), wherein the court found certain sales representatives to be employees of the defendant companies rather than independent contractors. In *Donohue,* however, the sales representatives were paid directly by the defendant, who withheld payroll taxes on their behalf, and they enjoyed company-sponsored health benefits. There was also no evidence that the sales representatives in *Donohue* were incorporated or had their own employees.

products, and that he was economically dependent on Esprit, are not legally sufficient to overcome the weight of the other factors. *See Zippo Mfg. Co., supra*, 713 F.2d at 38; *Dexter Shoe, supra*, 701 F.Supp. at 1099–1100.

### B. *Single Employer Doctrine*

■ The plaintiffs advance another theory under which they could be considered employees of Esprit and thereby enjoy the protections of the federal and state anti-discrimination laws. This theory is the "single employer" doctrine developed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1988). Courts have adopted the standards promulgated by the National Labor Relations Board ("NLRB") for determining whether two business should be treated as a single employer under federal anti-discrimination laws. The NLRB test looks to whether there are (1) interrelated operations, (2) common management, (3) centralized control of labor relations and (4) common ownership. *Perry v. Manocherian*, 675 F.Supp. 1417, 1425 (S.D.N.Y.1987) (Sweet, J.).

However, the single employer doctrine is inapposite to this case. The doctrine has been used to determine whether two companies "are so interrelated as to assume joint responsibility for the acts of the immediate employer." *Perry, supra*, 675 F.Supp. at 1425; *see also Armbruster v. Quinn*, 711 F.2d 1332, 1336 (6th Cir.1983) (test used to "formulat[e] a method to assess the propriety of treating a parent and subsidiary as a single employer under Title VII."). Plaintiffs often seek to use the single employer doctrine to hold a parent company liable for the discriminatory acts of a subsidiary or similarly related organization. *See, e.g., McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 932–33 (11th Cir.1987). From the undisputed facts in this case it appears that Frishberg was employed by Dee Bee Sales, as discussed above. Frishberg does not seek to hold Esprit liable for discriminatory acts committed against him by Dee Bee Sales. Instead, he seeks to establish, through the single employer doctrine, that he was an employee of Esprit in order to hold Esprit liable for the allegedly discriminatory acts of Esprit itself. Since Frishberg does not claim that Dee Bee Sales discriminated against him, but rather that Esprit did, the present fact pattern does not fit the situation for which the single employer doctrine was developed.

Further, even if the single employer doctrine were apposite, it focuses on the degree of control by the parent or related company over the direct employing company. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983); *Perry, supra*, 675 F.Supp. at 1425; *Odriozola v. Superior Cosmetic Distributors, Inc.*, 531 F.Supp. 1070, 1075 (D.P.R.1982). This kind of control is also at the heart of the hybrid test for distinguishing between employees and independent contractors that was discussed above. Since Esprit's control of the actions of Dee Bee Sales and its employees was found insufficient to make Frishberg an employee of Esprit rather than of Dee Bee Sales, the facts are likewise insufficient to support the theory that Esprit and Dee Bee Sales constitute an integrated enterprise.

Accordingly, Frishberg is not an employee of Esprit under either theory advanced by plaintiffs. Frishberg therefore does not enjoy the protection of the ADEA or the state human rights law, and summary judgment on these issues is granted to Esprit.

### III.

Esprit also claims entitlement to summary judgment on plaintiffs' contract claims. A preliminary issue that must be decided is whether New York or California law governs the contract between Frishberg and Esprit. This contract consists, at a minimum, of the letter agreement between Frishberg and Rosenberg dated October 9, 1978. Plaintiffs claim that California law governs the interpretation of the contract, while defendant asserts that New York law applies.

■ A federal court sitting in diversity applies the choice of law rules of the forum

state. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). New York courts apply a "paramount interest" test, which applies the law of the jurisdiction having the "greatest interest in the litigation." *Crescent Oil & Shipping Services, Ltd. v. Phibro Energy, Inc.,* 929 F.2d 49, 52 (2d Cir.1991). " '[T]he facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.' " *Hutner v. Greene,* 734 F.2d 896, 899 (2d Cir.1984) (quoting *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 248 N.E.2d 576, 582, 300 N.Y.S.2d 817, 825 (1969)); *see also Intercontinental Monetary Corp. v. Performance Guarantees, Inc.,* 705 F.Supp. 144, 147 (S.D.N.Y.1989) (Carter, J.). With respect to employment contracts, "the matters of performance and breach are to be determined by the law of the place of performance, or, in the alternative, by the law of the state having the most significant contacts with the matter in dispute." *Peters v. MCI Telecommunications Corp.,* 685 F.Supp. 411, 412 (S.D.N.Y.1988) (Daronco, J.).

▉ In this case plaintiffs claim that California was the place of performance of the contract. They focus on the fact that Esprit is a California corporation and that all orders for Esprit merchandise were filled from offices in California. However, Frishberg and Rosenberg met to discuss the proposed contract in New York. Frishberg's sales territory included all of New York State and he reported to an Esprit regional sales manager in New York. Plaintiff Dee Bee Sales is incorporated in New York. All of the activity that Frishberg was obligated to perform under the contract occurred in New York or New Jersey, not in California. Thus, New York

has more significant contacts with the performance of the contract.[6] Accordingly, the court finds that New York has a paramount interest in this dispute, and the law of New York governs the contract at issue.

Whether Frishberg's status as an independent contractor precludes any action for breach of an implied-in-fact employment contract is unclear under New York law, although other jurisdictions have so held. *See Lumia v. Roper Pump Co.,* 724 F.Supp. 694, 698 (N.D.Cal.1989) (applying California law); *Dexter Shoe,* 701 F.Supp. at 1102–03 (applying New Jersey law). The court need not decide this issue since even if such a claim remains open to Frishberg under New York law, he has failed to establish its elements as a matter of law.

▉ The letter agreement between Frishberg and Rosenberg does not contain a term or duration of employment. Consequently, the relationship it establishes is one of indefinite duration, and is therefore terminable at will. *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 237 (1983). While other jurisdictions have developed numerous exceptions to the employment at will doctrine, New York seems to have adopted only three. The New York Court of Appeals has ruled that, "absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Id.* There is no claim in this litigation that the contract between Esprit and Frishberg has a constitutionally impermissible purpose or that there is a relevant statutory prescription against contracts at will. Thus only an express limitation in the

---

**6.** There is an additional, public policy reason favoring New York law. Despite the fact that plaintiffs have been held to be independent contractors, not employees, much of the discussion that follows will apply employment law to this dispute. Courts have observed that "New York has a strong interest in maintaining a clear and consistent body of employment law." *Peters, supra,* 685 F.Supp. at 413. The New York Court of Appeals has consistently adhered to its at-will

employment law doctrine while other jurisdictions have departed from a strict at-will rule. *See Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 506 N.E.2d 919, 514 N.Y.S.2d 209 (1987); *Wakefield v. Northern Telecom, Inc.,* 769 F.2d 109 (2d Cir.1985). Deference to this public policy of the State of New York counsels application of New York law to this matter. *See Peters, supra,* 685 F.Supp. at 413.

802

contract could exempt it from the employment at will doctrine.

In *Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982), the court discussed the express limitation exception to the employment at will doctrine. Significant factors considered by the court in determining whether an express limitation existed included statements in an employee handbook; explicit, written promises by the employer that the employee would not be discharged except for cause; the employee's reliance on that promise in coming to work for the employer; and his rejection of other employment offers. To fit within the terms of the *Weiner* exception, however, is a difficult task. *See Wright v. Cayan*, 817 F.2d 999, 1004–05 (2d Cir.) (collecting New York and federal cases on this issue), *cert. denied*, 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987).

Nothing in the written contract between Frishberg and Esprit contains an express limitation on Esprit's ability to terminate Frishberg at will. Frishberg's contention is that contemporaneous oral statements by Rosenberg also constituted part of his agreement with Esprit, and that those oral statements led him to believe that he would not be discharged from Esprit without cause. Defendant counters that any such oral statements are barred by the parol evidence rule.

█ The parol evidence rule is a rule of substantive law of the State of New York. Under this rule the clear and unambiguous terms of a valid, integrated written instrument ·cannot be contradicted or varied by prior or contemporaneous extrinsic oral or written evidence. *Happy Dack Trading Co. v. Agro–Industries, Inc.*, 602 F.Supp. 986, 991 (S.D.N.Y.1984) (Carter, J.).

█ In order for the parol evidence rule to apply, the written agreement in question must be integrated, which depends in turn on whether the contract "appears complete on its face." *Battery S.S. Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 n. 3 (2d Cir.1975). The present agreement contains provisions covering territory, commission rate, drawing accounts,

products to be sold, starting date, staffing, and various special arrangements. By its terms the letter agreement was sent to Frishberg to "confirm our meetings last week in New York, outlining your joining Esprit de Corp." Defendant's Exhibit 1. Similarly comprehensive documents have been held to be integrated contracts that trigger the parol evidence rule. *See Mastrangelo v. Kidder, Peabody & Co.*, 722 F.Supp. 1126, 1131–32 (S.D.N.Y.1989) (Patterson, J.); *Happy Dack, supra*, 602 F.Supp. at 991. Frishberg argues that the terms of the contract are vague or ambiguous because it does not contain a salary amount or a duration of employment. However, since the agreement specifies a commission rate, salary terms are unnecessary, and the fact that there is no duration of employment listed simply means that the duration is indefinite. Since an indefinite duration means the contract is at-will under New York law, it does not render the contract ambiguous. Thus the agreement appears unambiguous and complete on its face and is therefore integrated as a matter of law.

Since the letter agreement is an integrated document, the parol evidence rule bars the introduction of any oral statements purportedly made by Rosenberg to Frishberg at or about the time the contract was negotiated. Operation of this rule removes from the case all evidence that the contract between Frishberg and Esprit was anything other than at-will. Accordingly, there is no evidence before the court that could bring Frishberg within the limited *Weiner* exception to the at-will employment rule, and his contract was terminable at will as a matter of law.

█ Plaintiff Frishberg claims that Esprit's periodic reductions in the commission rate and its removal of two large accounts from his portfolio constituted a breach of the terms of his contract, which set a commission rate and the boundaries of his sales territory. However, since Frishberg's contract with Esprit was terminable at will, Esprit was free to alter the terms of the employment. Frishberg was always free to terminate his relationship

with Esprit, and could have expressed his dissatisfaction with the alterations by doing just that. New York law holds that Frishberg's decision to continue working with Esprit after the unilateral changes in the employment relationship indicated his acceptance of the new terms of the relationship. Thus when Frishberg elected to stay with Esprit after each commission reduction or removal of an account, a new agreement was formed incorporating the changes. *Waldman v. Englishtown Sportswear, Ltd.*, 92 A.D.2d 833, 460 N.Y.S.2d 552, 555 (1st Dept.1983); *Horowitz v. La France Industries, Inc.*, 274 A.D. 46, 79 N.Y.S.2d 794 (1st Dept.1948). Accordingly, since it is undisputed that Frishberg remained at Esprit after each of the pre–1989 alterations he complains of, he ratified those changes as a matter of law and there was no breach of contract.

It is unclear from the record whether Frishberg ratified the last alteration in the terms of the contract, the removal of the Stern's account from Frishberg and Dee Bee Sales in 1989. Esprit's action may have prompted Frishberg to leave Esprit voluntarily or it may have constituted termination or constructive termination of Frishberg and Dee Bee Sales by Esprit. Resolution of this factual dispute is unnecessary, however, since the relationship was terminable at will by either party, and no breach of contract claim is viable.

 Finally, plaintiffs claim in two counts of the complaint that they enjoy a property right to commissions payable from sales within their territory and that they are entitled to future commissions on an "on-going basis," apparently extending after the termination of the relationship between plaintiffs and Esprit.[7] Amended Verified Complaint, ¶¶ 74–76, 105–07. Neither of these claims finds any support in the record or the law. First, Frishberg claims that these rights arise out of the written agreement between Frishberg and Esprit. Frishberg Deposition at 503–504. However, that agreement does not refer to

a right to indefinite future commissions or to a property right to commissions. Therefore, no evidence exists to support this claim. Any contention by Frishberg that the alleged oral statements by Rosenberg included assurances about future commissions would be barred by the parol evidence rule, as discussed above. Second, New York law on this issue clearly states that a sales representative employed at will is not entitled to commissions after the relationship has been terminated. *See McEntee v. Van Cleef & Arpels, Inc.*, 166 A.D.2d 359, 561 N.Y.S.2d 25 (1st Dept. 1990); *Mackie v. La Salle Industries, Inc.*, 92 A.D.2d 821, 460 N.Y.S.2d 313 (1st Dept. 1983); *Pelletier v. Dobbins–Trinity Coal, Inc.*, 59 N.Y.S.2d 676 (App.Term 1st Dept. 1945); *Scott v. Engineering News Pub. Co.*, 47 A.D. 558, 62 N.Y.S. 609 (1st Dept. 1900). Since Frishberg's relationship with Esprit was terminable at will, he enjoyed no right to commissions after the relationship has ceased.

Summary judgment is therefore granted to Esprit on the contract claims and on plaintiffs' claims under New York Labor Law §§ 191(1)(c), 191–b(3), 191–c(1), which are entirely dependent on the contract claims.

### IV.

 This leaves plaintiffs' claim for tortious interference with business relations. To prove tortious interference, plaintiffs must establish that Esprit interfered with its business relations with third parties, and that they did so. *"either* with the sole purpose of harming the plaintiff[s] *or* by means that are 'dishonest, unfair, or in any other way improper.'" *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 945 (S.D.N.Y.1983) (Goettel, J.) (citation omitted); *see also Western Meat Co. v. IBP, Inc.*, 683 F.Supp. 415, 417 (S.D.N.Y.1988) (Carter, J.).

 Esprit argues that it could not tortiously interfere with business relations between plaintiffs and third party custom-

---

**7.** Frishberg does not claim that Esprit has not paid him commissions on sales that he placed while still working with Esprit.

ers because any business relations that the customers had were with Esprit, not with plaintiffs. It is clear under New York law that employees cannot state a claim against their employers for tortious interference with business relations since the business relations belong to the employers, not the employees. *See McEntee v. Van Cleef & Arpels, Inc.,* 166 A.D.2d 359, 561 N.Y.S.2d 25 (1st Dept.1990); *Primo Constr., Inc. v. Swig Weiler & Arnow Management Co.,* 160 A.D.2d 379, 553 N.Y.S.2d 425, 426 (1st Dept.1990). As discussed above, however, plaintiffs are independent contractors to Esprit, not Esprit's employees. They therefore may have business relationships with customers that are independent of Esprit, and Esprit could be liable if it tortiously interfered with those relationships. *See DeLong Equipment Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1519 n. 26 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990) (independent contractor can state claim for tortious interference by supplier with its relations with customers) (applying Georgia law). However, none of the business relationships which plaintiffs allege were interfered with by Esprit are independent of Esprit. The fact that Esprit took away from the plaintiffs the ability to sell Esprit goods to certain accounts cannot be tortious interference, since the relationship between plaintiffs and Esprit was at will, and plaintiffs have no independent right to sell Esprit merchandise. Accordingly, plaintiffs can state no claim for tortious interference based on Esprit's shifting accounts from them to in-house salaried sales representatives. *McEntee, supra,* 561 N.Y.S.2d at 26.

Plaintiffs also complain that Esprit had a "secret priority rating system" (Amended Verified Complaint, ¶ 93), under which orders placed for certain accounts got quick attention, while orders placed for less favored accounts "were deliberately held back" by Esprit. Amended Verified Complaint, ¶ 95. Plaintiffs allege that Esprit used this priority system intentionally to frustrate plaintiffs' efforts to serve their accounts properly, thereby interfering with their business relations with these ac-

counts. However, these alleged actions by Esprit could only interfere with the delivery of Esprit goods to plaintiffs' customers, and the business relationships in question are therefore not independent of plaintiffs' sale of Esprit merchandise. The business relationships allegedly interfered with belong to Esprit, not to plaintiffs. Plaintiffs' allegations therefore do not state a claim for tortious interference. *See McEntee, supra,* 561 N.Y.S.2d at 26; *Primo Constr., supra,* 553 N.Y.S.2d at 426 (no claim for tortious interference where plaintiff failed to allege interference with any independent business relations of plaintiff). *Cf. Cutter v. Lincoln Nat. Life Ins. Co.,* 794 F.2d 352, 356–57 (8th Cir.1986) (denying tortious interference claim because there was no relationship between plaintiff and third parties that was independent of plaintiff's role as agent for defendant) (applying South Dakota law). Since plaintiffs fail to state a claim for tortious interference with business relations, summary judgment is granted to Esprit on this claim as well.

## V.

For the foregoing reasons, defendant's motion for summary judgment on all claims is granted.

IT IS SO ORDERED.